## Case No. 7,079.

### IRWIN v. BAILEY.

[8 Biss. 523; 8 Reporter, 421; 11 Chi. Leg. News, 376.] [1]

Circuit Court, N. D. Illinois.  May 6, 1879.

Sleeper & Whiton, for plaintiff.

Lawrence, Campbell & Lawrence, **for** defendant.

DRUMMOND, Circuit Judge. The defendant executed a promissory note on the 7th of March, 1856, payable to the Racine & Mississippi Railroad, or order, for $4,000, in five years from May 10, 1856, with ten per cent. interest, payable annually. This note was secured by a mortgage, and was given to the railroad company, to enable it to raise money for the construction of the road. It was agreed on the part of those who represented the railroad company, that a certain indemnity should be given to the defendant by which he should be relieved from apparent liability existing upon the note and mortgage; and certain representations were made by them at the time, or before the note was executed, which constituted the inducement for the plaintiff to execute the note and mortgage; and it may be assumed that upon the faith of these representations the papers were executed and delivered to the railroad company. The railroad company took the note and mortgage and attached them together, with a bond on its own part, and an assignment, as it was claimed, of the note and mortgage contained in the bond, being in a form, as it was supposed, to

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 8 Reporter, 421, contains only a partial report.]

enable the company to raise money upon it; and accordingly, as the evidence shows, in 1857 money was obtained. The weight of the evidence, I think, is, that the money was raised upon the note and mortgage and the bond, and that they were transferred to the City of Glasgow Bank for value received. The bank thus became the holder of the note and mortgage. This was before the note became due, and of course, unless it had notice of any equities which might exist between the maker of the note and the railroad company, it would not be bound by them. There is no evidence whatever that the City of Glasgow Bank had such notice, and consequently, it cannot be bound or affected in any way by those representations. Then, after the bank became the equitable owner of this note, mortgage and bond of the railroad company, it was transmitted to the plaintiff, and he was instructed to represent the bank. At this time the note was not indorsed; that is to say, it had no memorandum written upon it, which, so far as the indorsement of the railroad company was concerned, would constitute a legal transfer of the property, unless that transfer was made by virtue of the assignment of the railroad company, attached with the note to the mortgage.

It is not necessary to decide what was the effect of the assignment contained in the bond, because when the plaintiff received the note it was transmitted with the bond and mortgage to Messrs. Strong & Fuller, of Racine, in 1858 or 1859, before the note was due. The note not containing the formal indorsement of the railroad company, Mr. Fuller took it to the president, and he indorsed the note in blank, as president of the railroad company. Now, the question is, whether he had the right to make this indorsement transferring the legal ownership of the property to any third person, or to make the note transferable by delivery.

It seems to me, under the evidence, that he had that right. He was the financial agent, or one of them, of the company to make negotiations of the assets of the company, to raise money upon them, and accordingly, under this authority, this particular note, bond and mortgage were transferred to the City of Glasgow Bank, and full consideration received. There is no evidence indicating that the power which was thus given to Durand, as president of the company, was revoked, and in view of the fact that the bank had become the equitable owner of the note, bond and mortgage, whatever view we may take of the effect of the assignment of the bond, undoubtedly Mr. Durand had the right to carry out, in good faith, the contract that had been made with the bank, and to indorse the note. This conferred upon the bank the ownership of the note, making it thus the legal indorsee of the note, as it previously had been the equitable owner.

It is to be observed that at this time the plaintiff was the agent of the bank. The legal effect of the indorsement was, that it transferred the note to the bank, and thus, if the plaintiff had any interest in it, he was simply the indorsee, holder, or bearer, as the agent of the bank. This was before the note had matured, and I can have no doubt, under the evidence in this case, that the plaintiff was clothed with all the equities of the City of Glasgow Bank, and that he can sustain his right to sue and to recover upon the equities and legal rights of the bank. The plaintiff, under what I consider the well-settled principles of law, had the right as the agent of the bank, after the maturity of the note, to bring a suit upon it, and the fact that he has no interest whatever in the note, and paid nothing for it, cannot deprive him of the right, provided it was transmitted to him for that purpose, and the suit was brought as the agent and by the consent of the bank. These being the principles of law, it is immaterial what statements may have been made by the agents of the railroad company at the time this note was executed. It was a negotiable note, transferred to the railroad company, and payable to its order. The defendant trusted to the representations of the railroad company. If they were untrue, or a fraud was practiced upon him, it was he who trusted the company. He transferred the note and mortgage, and the rule is well settled, that when one of two innocent persons must suffer, he must suffer who has enabled a third person to negotiate a security and to obtain money upon it. So as between the bank and the defendant, the latter must suffer, and not the bank which has paid value for this note, and without any knowledge of any circumstances calculated to throw doubt upon it.

The evidence has been allowed to go in with very great latitude; scarcely any restriction has been placed upon it by the court, the case having been tried without the intervention of a jury. Counsel were informed that whatever evidence there was that might have any bearing on the issue, would be admitted, subject to the legal rights of the parties. Consequently all the evidence relating to what is alleged to have been a fraud practiced by the agents of the railroad company upon the defendant, has been admitted, subject, of course, to be controlled and limited by the legal discretion of the court when the testimony was all before it. And the testimony being thus before the court, and as the facts in relation to the execution, transfer and delivery of the note to the City of Glasgow Bank, prove that value was paid for it, and that the bank had no knowledge whatever of any of the alleged frauds or misrepresentations, I think all of the evidence relating thereto is immaterial, and really inadmissible as against the bank, or as against the plaintiff as its agent. The release referred to in the pleadings was given long after this suit was instituted, and can have no legal effect as against the plaintiff. The plaintiff is therefore entitled to recover in this case, and the issue and judgment of the court will be accordingly.